INTERNATIONAL SILVER COMPANY, complainant,

*v.*

WILLIAM H. ROGERS CORPORATION, defendant.

[Argued July 1st and 5th, 1904. Decided March 6th, 1905.]

1. A corporation, the name of which has been selected with the intent to profit by the trade reputation of another by means of the similarity of names, is not entitled to use its corporate name in a business in which the use thereof is likely to lead purchasers to buy its goods for the goods of those by whose reputation it seeks to profit.

2. Where a trade name is unlawfully used for the purpose of profiting by the trade reputation of another, the injured party is entitled to relief although he may not have an exclusive right to the use of the name.

3. The fact that a person has acquired some skill and experience in a business which he has conducted for the purpose and with the intent of profiting unlawfully by the trade reputation of another, does not, as against the injured party, entitle a corporation in which he is interested to adopt and use that name in the same business, even though it may be accompanied with additions sufficient to prevent a purchaser from mistaking the goods of one for the goods of the other.

On cross appeals from a decree and order advised by Vice-Chancellor Stevens, whose opinions are reported in 66 *N. J. Eq.* (21 *Dick.*) 119, 140.

*Mr. Edward A. Day* and *Mr. Hiram R. Mills* and *Mr. John P. Bartlett* (of the New York bar), for the complainant.

*Mr. Craig A. Marsh,* for the defendant.

The opinion of the court was delivered by

SWAYZE, J.

From the decree awarding an injunction, both parties have appealed. From the order denying the complainant an accounting, the complainant has appealed.

We think the vice-chancellor was right in granting the injunction, and the defendant's appeal from the decree fails; and that he was right in refusing the accounting, and the complainant's appeal from the order fails. In these respects we have nothing to add to the accurate statement of the law by the vice-chancellor.

We think he erred in refusing to enjoin the defendant from using the word "Rogers" in any form, even as a part of the corporate defendant's name, in connection with the manufacture and sale of silver-plated table ware, carried on by or on behalf of the corporate defendant.

The question involved is not the right of an individual to use his own name. That question sometimes presents difficulties which can only be met by permitting the use of the name in such a way that it shall not amount to misrepresentation as to the goods sold thereunder. The case does not even involve the somewhat narrower question of the right of a corporation to adopt a name which, when applied to the goods sold thereunder, is calculated to deceive purchasers. The later authorities favor injunctions restraining the use of the corporate name without qualification. *North Cheshire and Manchester Brewery Company, Limited,* v. *The Manchester Brewery Company, App. Cas. 83 (1899)*; affirming the decision of the court of appeal, *1 Ch. Cas. 539 (1898)*.

The present case presents the still narrower question of the right to adopt and use a corporate name calculated to deceive, with an intent to profit by the trade reputation of others.

The defendant corporation did not adopt its name in order to secure the good will of a business which had been built up by William H. Rogers. The facts stated in the vice-chancellor's opinion, and sustained by the evidence, demonstrate, in our judgment, that William H. Rogers had engaged in the business of selling silver-plated ware, as far as he can be said to have engaged in that business at all, in view of his other vocations, solely with the object of profiting by the similarity of his name to the name of Rogers, so well known in the trade, to the good will of which the plaintiff had succeeded. William H. Rogers, under the facts of this case, had not acquired a trade reputation

for silver-plated ware. He had had no experience in the actual manufacture; his name was not a guarantee of the excellence of his wares; his experience was little more than that of a mere packer of goods made by others; most of the goods nominally made for him he had never seen or handled; he had had no more to do with the actual sales during the more active part of the business—that during which the Benedicts handled the goods in his name—than to receive a small profit over the manufacturer's price, a profit which was manifestly paid to him by the Benedicts in order that they might use the name of Rogers, and thereby profit by the trade reputation of the complainant. The name of the defendant could not, therefore, have been selected with a view to retain for the corporation the good will of William H. Rogers. It was selected, in our judgment, solely with the intention of deriving a profit by means of the Rogers name, from the reputation built up by many years of business activity by the predecessors of the complainant.

Such a case is not like that of a natural person using his own name. It is more nearly like the case of a natural person who voluntarily selects a name for his business which may enable him to profit by another's trade reputation.

In our judgment, the law was accurately stated by Judge Wallace, in the *R. W. Rogers Case, 70 Fed. Rep. 1017.* In his language, "a body of associates who organize a corporation for manufacturing and selling a particular product are not lawfully entitled to employ as their corporate name in that business the name of one of their number when it appears that such name has been intentionally selected in order to. compete with an established concern of the same name, engaged in similar business, and divert the latter's trade to themselves by confusing the identity of the products of both, and leading purchasers to buy those of one for those of the other. No person is permitted to use his own name in such a manner as to inflict an unnecessary injury upon another. The corporators chose the name unnecessarily, and having done so for the purpose of unfair competition, cannot be permitted to use it to the injury of the complainant."

This rule is sustained by the later cases in the federal courts.

*Garrett* v. *T. H. Garrett & Co., 78 Fed. Rep. 472; Bissell Chilled Plow Works* v. *T. M. Bissell Plow Co., 121 Fed. Rep. 357; Wyckoff, Seamans & Benedict* v. *Howe Scale Co., 122 Fed. Rep. 348.*

It was adopted in Connecticut in one of the early cases on this subject (*Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manufacturing Co., 37 Conn. 278*), and is now established in New York. *De Long* v. *De Long Hook and Eye Co., 35 N. Y. Sup. 509; Charles S. Higgins Co.* v. *Higgins Soap Co., 144 N. Y. 462; 39 N. E. Rep. 490.*

The last-cited case must be regarded as overruling *Scott Stamp and Coin Co., Ltd.,* v. *J. W. Scott Co., Ltd., 15 N. Y. Sup. 325,* and *Employers', &c., Co.* v. *Employers', &c., Co., 10 N. Y. Sup. 845,* if they are inconsistent.

It is urged that the defendant in this case attempted to distinguish his goods from those of the complainant by various devices, particularly the representation of a red seal and by calling his goods the seal brand. These facts are thought to negative an intent to profit by the reputation of the complainant's wares. In view of the fact that the goods of the complainant were sold under various brands—"Eagle," "Anchor," "Star," "Scimitar"—we think the adoption of the seal was not well calculated to avoid the confusion incident to the use of the name of Rogers. If the defendant had honestly desired to avoid that confusion, much more efficient means were available. The defendant was under no compulsion to use the name "Rogers" at all, and if that name had not been used confusion would have been impossible.

The decree advised by the vice-chancellor permitted the corporation to use the name "Rogers" "if the same be made distinctive whenever or wherever used by the prefix 'W. Henry,' and the addition of his title of office of president and the words 'Plainfield, N. J.'" He based this result upon the fact that the predecessors of the complainant did business under several names of which Rogers formed a part, and used various marks to distinguish their wares; upon the fact that one William A. Rogers competes in some degree with the complainant, and the

further fact that W. H. Rogers has acquired some degree of skill and experience in the business, or in some of its branches.

The fact that the use of various names and marks by the complainant's predecessors requires purchasers to discriminate in buying goods does not, in our judgment, lessen the right of the complainant to restrain the use of a corporate name calculated to deceive, selected with intent to create confusion. In all of the cases of this kind a nice discrimination would enable buyers to avoid the confusion, for it is seldom that names are selected which are identical. "Similarity, not identity," said Mr. Justice Bradley, "is the usual recourse where one party seeks to benefit himself by the good name of another." *Celluloid Manufacturing Co.* v. *Cellonite Manufacturing Co., 32 Fed. Rep. 94.*

The ground upon which the court enjoins the use of the name is that it is likely to deceive, and a nice discrimination is not to be expected from the ordinary purchaser.

The fact that William A. Rogers seems to have established a right to use the name does not enlarge the rights of the defendant. As was said by Judge Shipman, in *Clark Thread Co.* v. *Armitage, 74 Fed. Rep. 936* (at *p. 943*) : "It does not follow, however, because the complainant is not exclusively entitled to use the words 'Clark's Spool Cotton,' that therefore it cannot rightfully enjoin a person who is fraudulently making use of its label. The litigation in regard to the Rogers trade mark * * * showed that three distinct corporations were entitled to use the name "Rogers" upon their goods, but it never was supposed by a court that either injured owner had not a right to suppress the use of the trade name by a fraudulent competitor, or that it was an adequate defence that there were other owners whose use was not fraudulent."

The vice-chancellor cited *Baker* v. *Baker, 115 Fed. Rep. 297,* as sustaining the defendant's right to use William H. Rogers' name, when properly distinguished, in view of the skill and experience he may have acquired in the business. To this there are two answers: (1) That skill and experience, such as it was, was acquired in his effort to profit by the reputation of the complainant's goods. As the vice-chancellor said: "The conclusion

*1 Robbins.* International Silver Co. *v.* Rogers Corporation.

is inevitable that up to, or nearly up to, the time of the formation of the Rogers corporation, Rogers was using the name to gain for himself a profit which belonged to another. He was consciously seeking to pass off his goods as the goods of his competitor." We cannot think that a man who acquires skill and experience under such circumstances is entitled to protection against those whom he has sought to injure. (2) The case differs from the *Baker Case.* There the defendant changed his business methods, adopted advertisements, packages and labels which met with the approval of the successors of Walter Baker & Company, and so differentiated the dress of his products as to minimize as far as possible the risk of confusion between them and those of the complainant. A part of the corporate name was the place of business, and every person who dealt with the defendant in that case was thereby notified that its business domicile was not the domicile of the complainant. After reciting these facts, the court, in that case, added: "If the name had been selected unnecessarily or for the purpose of illegitimate competition with the complainant, we should not hesitate to enjoin its use. But it was selected without any element of bad faith or unfair use." In the present case the corporate name was selected unnecessarily, with the intent to make an unfair use of it.

The decree must therefore be reversed and the record remitted to the court of chancery in order that a decree may be made in accordance with this opinion. The complainants are entitled to costs in the court of chancery, to costs in this court on both appeals from the decree for injunction. The defendants are entitled to costs in this court of the appeal from the order denying an accounting.

On appeal of defendant from decree for injunction:

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—11.

*For reversal*—None.

On appeal of complainant from decree for injunction:

*For affirmance*—GREEN—1.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GRAY—10.

On appeal of complainant from order denying an accounting:

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—11.

*For reversal*—None.