## THE NANUET.

## PENNSYLVANIA R. CO. v. ERIE R. CO.

No. 13056.

District Court, E. D. New York.
March 17, 1933.

Burlingham, Veeder, Fearey, Clark, & Hupper, of New York City (Chauncey I. Clark and Paul Tison, both of New York City, of counsel), for libelant.

Purdy & Purdy, of New York City (Frank C. Mason, of New York City, of counsel), for claimant.

GALSTON, District Judge.

This suit involves a collision in the North River, some time after 7:30 p. m. on November 12, 1931, between the barge P. R. R. No. 433 in tow of the tug Johnstown, and the car float No. 3013 in tow of the tug Nanuet.

It is claimed that the Nanuet was at fault, as the burdened vessel in a crossing situation, for failing to slow, stop, or halt her course and keep out of the Johnstown's way. The defense is that the Johnstown and her tow were not properly lighted.

At about 7:30 p. m. on the evening in question, the Johnstown took the covered barge in tow from the south side of Pier L, Jersey City. It was made fast on the Johnstown's port side and was towed stern first. They were bound for Pier 54, North River, and at the time of the collision the course of the Johnstown was shaped towards Pier 35, North River, so that she was proceeding up stream toward New York.

At about the same time the Nanuet took in tow, at the Erie Float Bridge No. 2, the Erie car float No. 3013, loaded with ten cars, which was her full capacity. After the float was out of the stream she was taken on the starboard side of the tug. The Nanuet was then heading towards Pier 20, North River, to which she was bound.

At or about the same time two other ferryboats left their slips, and those on board gave material testimony. One was the ferryboat Goshen, which left the Erie ferry slips at Pavonia avenue bound for Chambers street, New York. After clearing her slips she shaped her course down the river about south by east.

The second vessel was the ferryboat Binghamton of the Delaware, Lackawanna & Western Railroad Company, which left the Lackawanna slip at Hoboken, bound for Barclay street, New York. She shaped her course about down the center of the river.

Though the collision occurred at a time before the Nanuet had picked up her speed, her captain could not say how fast she was going. When the collision was imminent and after he reversed his engines, the Nanuet still had headway.

The Binghamton prior to the collision had passed on the port side of the Nanuet at a distance of about three hundred feet. Up to that time the Nanuet had not seen the Johnstown and her tow. Then the Nanuet heard four whistles from the Binghamton, which is a signal in New York harbor to in-form another vessel that her lights are not burning. Immediately afterwards the captain of the Nanuet saw a black object ahead of him and toward his starboard. This proved to be the Johnstown and her tow. Alarm signals were exchanged, but the collision was then inevitable.

The captain and mate of the Nanuet, in explanation of the failure to stop, assert that they saw no lights on the "black object" ahead. I am convinced that they did not see the red light, for in this they are confirmed, not only by the captain of the Goshen, but also by Captain Gustersen, of the ferryboat Binghamton, a disinterested witness.

■ One must conclude, therefore, that the red light was not visible prior to the collision. In failing to provide this light the Johnstown was, of course, at fault, and the fault was one that contributed to the collision.

■ On the other hand, the Nanuet is not free from fault, for all the witnesses agreed that the Johnstown carried at least staff lights. A proper lookout would have warned the captain of the Nanuet, indeed he should have seen the lights himself.

The respective courses of the Johnstown and the Nanuet were in convergence; and accordingly it was the part of prudent maneuvering for the Nanuet either to slacken her speed, stop, or reverse until she ascertained what the approaching object was that carried staff lights. But heedless of the prudent move, she bore down until it was too late to avoid collision.

■ In the circumstances I find both vessels at fault. Half damages may be awarded to the libelant.

Settle decree on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.