ERNEST HEMINGWAY and Others, Plaintiffs, *v.* FILM ALLIANCE OF THE UNITED STATES, INC., and MIDTOWN THEATRE CORPORATION, Defendants.

Supreme Court, Special Term, New York County, July 3, 1940.

*M. J. Speiser*, for the plaintiffs.

*M. L. Maier*, for the defendants.

BENVENGA, J. The plaintiffs, the writers and producers of a play entitled " The Fifth Column," seek to enjoin the exhibition of a motion picture made and released in England as " Spies of the Air," and now sought to be shown under the title " Fifth Column Squad."

The plaintiffs allege that the title " The Fifth Column " has never been used in any other play or photoplay; that, in the field of entertainment, that title has come to mean their play, and that they have acquired a property right in the use of it; that the defendants are attempting to capitalize on the reputation and good will of their play by using the words " Fifth Column Squad " as the title of their motion picture; that the use of such title is likely to confuse and mislead the public and that its use constitutes unfair competition and should be enjoined.

The plaintiffs' play, " The Fifth Column," was written by Ernest Hemingway, prepared for the stage by Benjamin F. Glazer and produced by the Theatre Guild, Inc. It played in New York city from March 5 to May 18, 1940, after having opened elsewhere. The play enjoyed some measure of success. It is intended to resume the play in New York city after the summer and to present it in other cities throughout the United States. Moreover, negotiations are pending for the sale of the play to producers of motion pictures.

The controlling question is whether, under the circumstances, the use by the defendants of the words " Fifth Column " as a part of the title of their motion picture is fair or unfair. (*Fisher* v. *Star Co..* 231 N. Y. 414, 427.)

It is true, as counsel asserts, that the expression " Fifth Column " is a descriptive phrase in current popular use. Ordinarily, it is not subject to pre-emption by any one. But it is equally true that, where a play has attained such popularity that its title has acquired a secondary meaning, one associated with or suggestive of the play, a rival producer will not be permitted to use or simulate the title, or any part of it, in such manner as to deceive or mislead the theatre-going

public into believing that the later production is a motion-picture version of the earlier play. (*Warner Bros. Pictures, Inc.,* v. *Majestic Pictures Corp.,* 70 F. [2d] 310; *Patten* v. *Superior Talking Pictures, Inc.,* 8 F. Supp. 196, 197; *Underhill* v. *Schenck,* 238 N. Y. 7, 20, 21.) " It is not essential to prove actual confusion, deception or bad faith as a basis for injunctive relief to prevent the use of a name which is likely to lead to confusion." (*New York World's Fair 1939, Inc.,* v. *World's Fair News, Inc.,* 163 Misc. 661, 665; affd., 256 App. Div. 373.) The likelihood of deception is enough. (*T. A. Vulcan* v. *Myers,* 139 N. Y. 364, 367; *Philadelphia Storage Battery Co.* v. *Mindlin,* 163 Misc. 52, 55.) Indeed, this principle is not disputed.

It is argued that the plaintiffs' production was not a success or, at least, such an achievement that its title has acquired a secondary meaning and thus suggestive of the play itself. This may be the fact. Even so, to paraphrase the opinion in *Skelly Oil Co.* v. *Powerine Co.* (86 F. [2d] 752, 754), quoted with approval in *Philadelphia Storage Battery Co.* v. *Mindlin* (163 Misc. 52, 56, 57), a vast field of words and phrases is open to a producer who wishes to seek a title to distinguish his play or photoplay from that of another. Consequently, whatever doubts there may be on that score should be resolved in favor of the producer who has already spent time, money and effort to give the title to his production a secondary meaning and against the new comer who, even unintentionally, uses or simulates the title in such a manner as to confuse or mislead the public. Moreover, the use by the defendants of the proposed title is calculated not only to create confusion in the public mind, but also to injure the property and property rights of the plaintiffs. It will affect not only the moving picture rights in their play, but the further presentation of the play itself.

The motion for temporary injunction is granted. Settle order.